## PHILLIPS *vs.* HUNNEWELL.

Where, in a negotiation for the purchase of a yoke of oxen, the buyer, having his arm over one of them in the act of measuring him, said he would give the price demanded ; to which the seller replied that he might have them ; and the seller then borrowed them to haul a load of lumber to his home, which was ten miles distant, engaging to put them to no other use ; it was held that this was no delivery of the oxen ; and so no title passed to the intended buyer ; no earnest having been paid, and no memorandum given.

THIS case, which was replevin for a yoke of oxen, came be-fore the court upon exceptions filed to the opinion of *Perham J.* in the court below.

It appeared, at the trial below, that the oxen were originally the property of *Samuel Walker* ; or, at least, that he was the agent of his mother, who owned them, and by whom he was

authorized to sell them to the plaintiff. On the 19th of *July* 1824, *Walker* having the oxen at the village in *Anson*, the plaintiff inquired of him the price, which was set by *Walker* at sixty five dollars. The plaintiff then measured the girth of the oxen with a line, and immediately said he would give the price ; to which *Walker*, while the plaintiff had his arm over one of the oxen in the act of measuring him, replied that he might have them. The oxen were yoked at that time ; but nothing was said about selling the yoke. After this, *Walker* proposed to borrow the oxen to haul a load of lumber to his house, which was about ten miles distant from the place of sale; to which the plaintiff assented, upon condition that they should not be put to any other work; and they were taken accordingly. More than a month before this, *Walker* had told the plaintiff he might have the oxen at the same price.

On the day following this transaction at *Anson*, the defendant purchased the same oxen of Mrs. *Walker* and her son, for sixty seven dollars ; paying seventeen dollars down, and agreeing to pay the balance in a few days ; which he accordingly did, and took them away. At the time of this sale, *Walker* told the defendant that the plaintiff claimed the oxen by virtue of the supposed sale of them on the day previous ; but the defendant said that no earnest having been paid, the plaintiff had no right to them.

A few days after this, *Walker* told the plaintiff that he and his mother had sold the oxen to the defendant, and received seventeen dollars in part payment ; nine of which he had expended ; and the plaintiff requested him to get them back from the defendant ; and for that purpose gave him eight dollars ; taking his receipt as for so much in part payment for the oxen. In *August* following the plaintiff tendered to Mrs. *Walker* and her son fifty seven dollars, demanding the oxen.

Upon this evidence, if believed by the jury, *Perham J.* instructed them that a delivery of the oxen to the plaintiff was sufficiently proved, and that the property was therefore in him ; and they accordingly found for the plaintiff ; to which the defendant excepted.

*Boutelle,* in support of the exceptions contended that the evi-dence shewed no sale to the plaintiff, but only a contract to sell. The measuring of the oxen was to ascertain their size ; and the acceptance was only closing with the offer to sell, and not an actual sale. The acts of the plaintiff were acts of examination; not of ownership ; *Vincent v. German* 11 *Johns.* 133 ;—and as the sale was to be for ready money, and none was actually paid, the contract was never completed. *How v. Palmer* 3 *Barnw. & Ald.* 321. *Tempest v. Fitzgerald ib.* 680.

Nor was here any constructive delivery to the plaintiff. The cases on this subject are those of bulky articles, not capable of delivery in any other mode. *Searle v. Keaves* 2 *Esp.* 598. *Chaplin v. Rogers* 1 *East* 195. *Elmore v. Stone* 1 *Taunt.* 458. And in such cases the circumstances from which a delivery was in-ferred, ought to be so strong and clear as to leave no doubt of the intent of the parties. *Dana v. Ogden* 3 *Johns.* 399.

*Bond,* for the plaintiff, argued from the evidence in the cause, that a delivery of the cattle to the plaintiff was sufficiently prov-ed. They were as fully in his possession after the bargain, as they had before been in that of *Walker.* No particular ceremony was necessary. It was enough that the seller was willing to part with them, and that the buyer was ready and actually accepted them upon the terms proposed. Here was all the possession in the plaintiff which the nature of the case admitted ; and the con-tract is therefore not within the statute of frauds. *Roberts on frauds,* 173, 177, 182. 11 *Johns.* 283. *Elmore v. Stone* 1 *Taunt.* 458. *Hollingsworth v. Napier* 3 *Caines* 182, *note a. Shep. Touchst.* 57.

There having been no express agreement as to the time when the money should be paid, it was payable on request. The pay-ment might have been made a condition precedent ; but it was not so stipulated ; and the seller was content to part with the possession of the oxen, reserving to himself a right of action for the price, if not paid upon demand. The consent of the plaintiff, asked for and obtained by *Walker,* that he might use the cattle for a particular purpose, and the plaintiff's prohibition of any

Phillips *v.* Hunnewell.

other use of them, which was assented to by *Walker*, are une-quivocal recognitions of the transfer of the property.

These facts having been communicated to the defendant prior to his purchase of the oxen, he cannot be treated as having acted with good faith. The second sale was a fraud in *Walker*, to which the defendant became a party ; and from which, there-fore he can derive no benefit. *Lanfear v. Sumner* 17 *Mass.* 110 *Brooks v. Powers* 15 *Mass.* 244.

Weston J. delivered the opinion of the court.

The title of the defendant to the oxen in question has been made out, unless there had been a prior sale to the plaintiff, by the former owner. Such a sale has been set up and relied upon; but the defendant contends that it was at most only a contract, void by the statute of frauds ; the property exceeding thirty dollars in value, and no earnest having been paid, or note or memorandum given. This position is well founded, unless the property was then transferred by an actual delivery, or by such acts and declarations as are equivalent thereto. The plaintiff never had the use and control of the oxen ; nor was there ever a formal delivery to him. If there was any delivery sufficient to pass the property, it was constructive, and can be gathered only from the circumstances attending the transaction.

It is a general rule in contracts of sale, where no time of credit is given, that the property is not transferred, but upon payment of the price. 2 *Black. Com.* 447. 1 *Salk.* 113. 6 *East* 625. If therefore, in a negotiation of this kind, the one party offers to give a certain price for an article, and the other thereupon says he shall have it, there is no change of property, until payment is made by the purchaser. *Blackstone* says it is no sale without payment ; unless the contrary be expressly agreed. This may be laying down the rule somewhat too strongly ; or under certain circumstances, an intention to give credit may be implied ; but it ought to be clearly and unequivocally indicated from the acts and declarations of the parties.

In the case before us, the price had been fixed ; the plaintiff said he would give it ; and while he had his arm upon one of the

oxen, in the act of measuring him, the owner told him he might have them. There is nothing thus far, from which any inference is to be drawn, that payment was not to precede a delivery. What followed was only an intimation on the part of the owner that he was not then ready to part with his oxen ; but wished to borrow them to convey home certain timber. To this the plaintiff acceded, if he would not use them for any other purpose. The desire expressed by the former owner to borrow the oxen, might seem to imply that he then considered them as the plaintiff's property. A request of a favor of this kind, in strictness admits that the property does not belong to the party seeking it, but to him of whom the favor is sought. But language is qualified, by the manner and connexion in which it is used. We are to gather the intention of the parties from their acts and declarations, taken together ; and not from the strict and accurate meaning of a single term. *Walker,* the former owner, was aware that the price being settled, the plaintiff, upon payment, would be entitled to immediate possession. This being inconvenient to him, he desired that it might be postponed, until he had used them for the purpose intimated. He knew that the plaintiff's offer did not imply an engagement to receive them at a future day ; and the request made by him can fairly, under the circumstances, be understood as expressing nothing more than a desire on his part that the bargain might not be defeated, by the use he proposed to make of the oxen, and that the plaintiff would hold himself ready to take them, when that purpose had been answered. We cannot, from the facts, feel warranted in drawing the conclusion that credit was contemplated; and, unless it was, the property was not transferred.

The statute of frauds is a very beneficial one ; and its objects are best secured by adhering strictly to its provisions ; *unless in* cases which clearly do not fall within the meaning of the law. It was intended to remove all doubts by requiring some clear and positive act to show the completion of the bargain. In the case of *Bailey v. Ogden 3 Johns. 399,* cited in the argument, *Kent C. J.* in delivering the opinion of the court, says, " the circumstances, which are to be tantamount to an actual delivery, should

be very strong and unequivocal, so as to take away all doubt as to the intent and understanding of the parties."

The case of *Elmore v. Stone* 1 *Taunt.* 458, was an action brought to recover the price of two horses. The plaintiff, who kept a livery stable, having demanded one hundred and eighty guineas for them, the defendant, after offering a less sum, which was rejected, at length sent word " that the horses were his, but that as he had neither servant nor stable, the plaintiff must keep them at livery for him." The plaintiff, upon this, removed them out of his sale stable into another ; and this was held to be a constructive delivery, sufficient to satisfy the statute of frauds. The case was decided upon the ground that expense was incurred by direction of the buyer, and that they were constructively in his possession, while at livery in the plaintiff's stable. In *Horn v. Palmer*, cited in the argument, *Bailey J.* expresses a doubt of the authority of the decision of *Elmore v. Stone*, but insists that at any rate it goes as far as any case ought to go.

If the bargain was complete, and the property changed, in the case before us, *Walker*, the former owner, could have maintained an action for the price ; and notwithstanding they remained in *Walker's* actual possession, they were at the plaintiff's risk, and would have been assets in the hands of his administrator. But what was said and done, prior to the sale to the defendant, could not be attended with these consequences. Actual possession taken, earnest paid, or a note or memorandum signed by the party to be charged, are unequivocal acts. Constructive delivery has in certain cases been held to be equivalent to actual ; but it was where acts of ownership have been exercised by the purchaser, or he had employed the seller as his agent in taking care of the property. Nothing of the kind appears in this case. Nor was there any language used, from which we can understand with any certainty, or even probability, that the parties considered the bargain consummated, and the oxen transferred.

For these reasons, the opinion of the court is, that the judge who presided at the trial in the Common Pleas, was incorrect in instructing the jury that a delivery was proved. The exceptions are therefore sustained ; and a new trial must be had at the bar of this court.